The case for argument is the Central States Pension Fund v. Rail Terminal Services. Mr. Blechschmidt Good morning, and may it please the Court. Frank Blechschmidt on behalf of the Central States Pension Fund, Central States Health & Welfare Fund, and their Trustees. This case involves an area of critical importance for multi-employer benefit plans, which is the ability of plan trustees to promptly collect unpaid employer contributions. We are asking you to reverse a decision below in which the District Court dismissed the fund's claims on the faulty premise that those claims sought statutory withdrawal liability and that a withdrawal liability arbitration should proceed first before any of the contribution claims could be resolved. Now, that decision was incorrect for a number of reasons, but there are a couple of key points that we want to touch on today. First, a ruling on the merits of the fund's complaint and the relief requested did not require the resolution of any withdrawal liability questions. How can it not without knowing the date of withdrawal? The fund has one idea about the date of withdrawal. The employer has a different idea. How does one figure out what contributions are owing without having that fixed? Because the District Court is only being asked an antecedent question here. It's being asked, does the employer owe contributions for a specific period of time based on a contract or a set of contracts? Here those contracts were the 2013 CPA, the participation agreement, and the trust agreement. I wish you'd address my question. How can what is due under the contract be resolved until we know the withdrawal date? Because to determine the withdrawal date, that's a different analysis. A withdrawal date... I'm aware it's a different analysis, but I wish you'd address my question. Well, the withdrawal date is looking at an entire controlled group of companies, and the trustees would be determining whether that entire controlled group sees participation in the plan. And from there, the trustees are assessing withdrawal liability based on a set of statutory rules. Let me put it a different way. Your contention in this case is that the employer owes contributions for a period after the arbitrator determined that the employer withdrew from the plan. Is that correct? That's not correct, because... You're not seeking one cent for anything on and after, what was it, March 17th? That... Let me... The district court said you weren't seeking one cent for any date before March blank 1917. Well, that's not quite correct. We did have audit-based claims that were prior to March of 2017, but the arbitrator's decision just came out a few weeks ago. At the time the funds filed their complaint, and at the time the district court made its decision, there had been no arbitration decision. Yes, we know that, but I can't see how the contribution claim can be disentangled from a determination of the withdrawal date. Well, again, this will only be the case when the entire controlled group of companies contains one employer, which in this case, the controlled group as we know it does contain only one employer, which is Rail Terminal Services. But the district court is being asked a contractual question, not a statutory question. I understand that's the question you would like to ask. I will ask my question once more. How can the district court answer it without knowing the date on which the employer withdrew? The district court is only looking at the contracts and seeing if there is a contribution obligation. So you want an advisory opinion on what the contribution would be if the employer hadn't withdrawn? No, Your Honor. No, Your Honor. I know the employer is arguing that the trustees had made a determination that the employer had not withdrew at the time we filed the complaint, but that would be the case in every contributions case. In every contributions case, the trustees assume that the employer has not seized participation in the plan, that it's still a participant, and we are seeking to collect the remedies outlined in Title I of ERISA, and we're seeking to collect contributions for a specific . . . You're just not addressing my question. And it also means you're not addressing the reason you lost in the district court, because my question is the reason you lost. To say over and over, we are seeking something, doesn't answer the question, how can a judge determine what your entitlement is without first having fixed the withdrawal date? Because the district court can determine whether we're entitled to any relief by looking solely at the contract. No, it can't. It needs to know the withdrawal date. You haven't explained how the withdrawal date is legally irrelevant to your claim for contributions after the date on which the employer says, and now the arbitrator has found that it withdrew. Well, the district court would have to look at whether there was a termination notice. The employer has raised a defense that the contract was terminated, and so where the analysis goes from there is was the contract actually terminated, and we look at whether there was a notice of termination. Again, that does not require a statutory question about a withdrawal date. What about the arbitrator? Doesn't the arbitrator make a decision? The arbitrator can make that decision about a withdrawal date, but again, that does not strip the federal court of its jurisdiction to decide. It's not a question of jurisdiction. And it does not strip the federal court of the obligation to decide contribution claims. Congress intended that these were going to be simple collection actions, and there's ample case law in this circuit and elsewhere about Section 515 of the U.S. Code. Under that case law, much of it builds on the reasoning of this court's en banc decision in Gerber Truck. There, the court said, benefit plans are like a holder in due course. Gerber Truck does not have anything to do with determining a withdrawal date. Let me ask you this question in a different way. What is the problem for the fund if, as the district court said, you wait until the arbitration is done, and then you challenge in one suit the arbitrator's decision, you make arguments for contributions on the assumption that the arbitrator is right, and a separate set of arguments on the assumption that the arbitrator is wrong? The only other alternative is for the district court to stay the litigation until that happens. There's no way the district court's going to decide it before that happens. What's the difference to the funds between a stay and filing a new lawsuit, contesting the award, and asking for the amount that's due? Well, the reason that matters for the fund is because there is harm that comes from that delay. No. You're not getting it. The two alternatives are a stay and a new suit. They involve exactly the same delay. Again, that's only if the district court does not decide these questions in the first instance. The judge isn't going to. If we remand, the judge is then going to issue a stay, which is completely within her authority pending arbitration, and you can't even appeal from an award of a stay. We do not believe a stay would be appropriate here because of the congressional policy. I know you don't. Look, I wish you would address my questions rather than addressing the questions you hoped I would ask. If those are the only two alternatives, and believe me, they are, what difference is it to the fund which of them happens? With a stay, any time there's a stay, that delays the collection process for the funds. Congress had the action. You're not comparing the two alternatives I gave you. Well, part of the harm, too, is if we send contribution questions to the arbitrator. Look, if you won't answer my questions, I'm done, but it really does help an advocate to try to answer the judge's questions. Why it matters for the fund is because when we send contribution questions to arbitration, the plans are on the hook for half of the arbitration fees and costs. Now, that's very different from the situation where the district court is deciding those contribution claims because under ERISA, under 502 G2, the plans have a, if they receive a judgment, they can recover the contributions, interest, liquidated damages, attorney's fees, and audit costs. The problem is if those questions are decided in arbitration first, not only can we not have remedies in 502 G, but we're also on the hook for half of the arbitration costs. So there's a financial impact there, but again, the delay does slow down the collection process. I think you're just fantasizing. The arbitration has already happened. That's why I gave you the alternatives I gave you. With the arbitration, there also is a difference regarding the standard of review. So in a contributions case, the district court is reviewing this as a clean slate. Everything is de novo. However, when a district court is reviewing an arbitration award, while it's giving a de novo review to legal determinations, it may need to give deference to factual findings of the arbitrator. And in this case, we can foresee there's going to be a dispute with the employer about whether there actually were any factual findings made by the arbitrator because the arbitrator ruled on partial summary judgment. However, if it is the case that the district court gives deference to factual findings, that's a problem, and here's why. The arbitrator relied extensively on parole evidence in reaching her conclusion that the Now again, based on case law in this circuit, in Gerber Truck, and elsewhere, parole evidence would not be admissible in a Section 515 case involving employer contributions. So we feel that the district court's decision runs the risk of removing that special status bestowed on benefit plans in Section 515 cases. So we're no longer a holder in due course. We may be subject to parole evidence, and it will be more difficult to overturn that on appeal in the district court. We would ask that you reverse and remand, and I will reserve the remainder of my time for rebuttal. Certainly, counsel. Mr. Birmingham. Good morning, Your Honor. First, may it please the court, my name is Rich Birmingham from Davis Wright Tremaine. I represent the appellee, Rail Terminal Services, Inc. Start off, to answer your question, Your Honor, you can't determine the obligation without first fixing the withdrawal date. This case was all about the date of withdrawal of Rail Terminal from Central States Plan. Rail Terminal withdrew on 3-31-2017. Central States maintained that the withdrawal date was 3-31-2018. The liability difference for that one year period is huge. It was another $800,000 in contributions, plus another $17 million in withdrawal liability. It changed the withdrawal liability from an enormous amount of $25 million to an astronomical amount of $42 million. The district court was correct in dismissing this case in favor of mandatory arbitration under the Multi-Employer Pension Plan Amendments Act of 1980. Now, I'd like to point out to the court that not only did it dismiss in favor of arbitration, but as the court is aware, the arbitration actually took place and was decided on January 31st of this year. Counsel, let me tell you what my principal problem with your argument is. Your argument makes sense with respect to the pension fund's contention. Why does it make sense with respect to the welfare fund's contention? The welfare funds are outside the scope of the Multi-Employer Pension Plan, etc. Amendments Act. Why didn't the district court have an obligation to decide the claims made by the welfare funds? Well, what the district court decided with the welfare fund was that the claim was just premature. Why is it premature? Because the audit was still ongoing and the audit findings weren't announced. And when central states decided to expand the contributions owed under both of these plans to 12-31-2018, the audit reports were simply never issued. It wasn't until July of 2018 that Rail Terminal actually got any kind of report from the trustees about what contributions were in dispute or weren't in dispute. And with regard to the health and welfare plan, there was only $35,000 at issue in there and only $11,000 of that was ever in dispute. And Rail Terminal simply decided that it would pay those disputed amounts with interest. So there is no longer any claim at all with regard to us. That's a conclusive answer. I will be asking Mr. Blechner whether he agrees with that answer. And he does because he sent a letter to the arbitrator indicating that all issues have been resolved and he sent a letter to us on February 13th indicating the amount that was disputed claims under either the pension or the welfare plan with interest and therefore there is no longer any issue with respect to that. What about that, whatever they call under-reported, and it was an earlier date? Is that, I think that's the count three. Yes, Your Honor. All those audits, an audit report was never issued for any of those because, I mean, what really happened was, you know, the issue was about complete withdrawal. We had brought an action in Texas to basically say that no provisions, no contributions were owed. In a preemptive fashion, they made a falling and disparate court for delinquent contributions and the audits were never finished. There was never any audit report that was issued. Is that still up in the air then? No. You know, as part of the arbitration, the CBUs for the pension fund, you know, up until 331-27 are at issue. We agreed to simply pay the amount with interest. So we agreed with central states that we would pay all the pension contributions and all the welfare contributions with interest. So there is no longer a claim there except for the fact that central states maintains that it should be entitled to get interest cost and attorney's fees on that amount. The way it ended in arbitration was the arbitrator didn't award cost or attorney's fees to any party, but suggested that if a complaint was made to either vacate, modify, or enforce their award, they could bring up that issue with the district court at that time. Now, in fact, Rail Terminal has filed a motion to enforce the arbitration award and that, when we filed it on 2-12-20, is now pending in front of Judge Coleman in the northern district of Illinois. So pursuant to statutory authority, 29 U.S.C. 1401, the only method for attacking an arbitration award is to file a motion to either enforce, remand, or force, modify, or vacate that award. We've already done that. We filed a motion to enforce that is now pending in front of Judge Coleman. So any activity that central states wants to bring has to be done as a counterclaim in that action. Is there something, is it health fund? Is that the same as welfare fund? Yes, Your Honor, it is. Okay, thanks. As the court is aware, well, let me back up to the arbitration because now with the arbitration award being entered, we feel that the remand motion that you're hearing now is made moot because count one was for a determination that the withdrawal liability was 3-31-2018. The arbitrator decided that in favor of rail terminal, deciding that it was 3-31-2017. Has the arbitrator fixed the amount that's owed as withdrawal liability? The arbitrator has not fixed that amount. Well, then it sounds like your suit to enforce is premature. Well, let's put it this way. The arbitrator has fixed all the variables. It didn't actually do the calculation. But the arbitrator has fixed the date of withdrawal at 3-31. It fixed the amount of the highest contribution rate at 57-30. And it fixed the contribution base units. So, it's just a multiplication of those things. So, essentially, they have fixed. Good luck. No, I mean, it's true, Your Honor. It's simple math. Look, you are just setting yourself up for a case situation in which the district court enforces the award and we vacate it on the ground that the whole thing was premature. You don't want that. Nobody wants that. Well, Your Honor, there is. It's your choice. But I'm telling you one very bad thing that can happen. Well, Your Honor, our motion to enforce basically asked the district court to order central states to file, to issue a new notice and demand for the withdrawal liability. So, I mean, it really is a simple math because the central states is so underfunded that the – The fact that it's simple math doesn't mean that it isn't a task for the arbitrator. But we're not going to argue this now. I'm just telling you, you may be standing here in a year arguing it later. And you won't want that. Okay. Well, I think it will be cured by our motion to enforce the arbitrator's award because in that we ask for central states to reissue the notice and demand and a determination there will, you know, will move that issue. Was count three something in the past? Yeah, count three was for contributions. And like I said, those have now been all settled. Okay. The underreported stuff is no longer an issue? No longer an issue, Your Honor. All right. If you're running out of things to say, there's no room. You have to finish. That's true. So, I mean, I think Your Honor gets the point that this was a determination for the date of complete withdrawal. That has now been established by the arbitrator. We think the district court's opinion was correct. We ask you to affirm the district court's dismissal of this action based on Seventh Circuit law. Under Seventh Circuit, you've already decided the issue under Robbins v. Admiral Merchants, again under Robbins v. Lady Baltimore, again under Central States v. Bomar, that the issue, the date of complete withdrawal is subject to mandatory arbitration. We also ask for our attorneys' fees and costs on this appeal under ERISA 502G and under ERISA 4301E. Thank you. Thank you, Mr. Birmingham. Anything further, Mr. Bleichschmidt? You can tell what my first question is. Is the dispute about welfare contributions actually settled? It is not settled. Count three is still a ripe controversy. We have instructed the employer that they may pay. This is not the time to do it. Time is short. We will direct the parties to file supplemental memos within one week addressing the question whether the welfare funds claim has been settled. Okay? Okay. Now, whatever else you were doing on the merits, that's up your alley. Okay. Well, I was just going to point out that the reason it's not settled is because there's still a controversy over the audit costs, the attorneys' fees, and the liquidated damages. On the point about the enforcement proceeding before Judge Coleman and the district court, we agree that that suit was premature. There has to be an award made by the arbitrator. 29 U.S.C. 1401 says that, and the AAA withdrawal liability rules say that. Once the hearings close, that starts the clock for the arbitrator to issue an award, and we're currently in that 30-day period right now. So the enforcement proceeding, the employer jumped the gun on that, and we do not have an award right now. Is that going to come within 10 or 12 days? Is that what you anticipate? It could. The arbitrator has not indicated. I mean, you said it's a 30-day time period, and we're in the middle of it. That's all, right? Yes, that's correct. So it could come in the next several weeks. Well, 30 days is 30 days, I guess. Maybe it isn't. Yes, that's correct. The employer mentioned a few Seventh Circuit cases at the very end, Admiral Merchants and Bomar. Again, those were cases involving the collection of withdrawal liability payments, and there was an actual question about a withdrawal date that the employer was requesting that the district court decide. The district court in this case was only being asked to decide whether a contract had terminated, and it was only making a determination as to a contract, the 2013 CBA. It was also being asked to interpret the participation agreement and the funds trust agreements and reach a conclusion on whether the employer owed contributions for a specific period of time. Lastly, I'll just finish by saying when Congress passed the 1980 amendments to ERISA, it had the actuarial stability of plans in mind, and it wanted to make sure that plans could collect contributions quickly and that that income could come in the door quickly because it's the most important source of funding for plans and their stability. We would ask that the court reverse remand and instruct the district court to decide the contribution claims in the first instance. Thank you. Thank you very much, Counsel. We will look forward to receiving memos about the status of the welfare funds claims within seven days, and when they're received, the case will be taken under advisement. The next case for argument this morning is Apex Morgan.